**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**PHILADELPHIA DIVISION**

In re:

**Beverly Glover**                                         **Case No.: 18-10753-amc**
**7300 Woodbine Avenue**                          **Chapter 13**
**Philadelphia, PA 19151**

    **Debtor.**
_____/

## TRINITY FINANCIAL SERVICES LLC'S RESPONSE TO DEBTOR'S OBJECTION TO CLAIM (Doc. No. 33)

**SECURED CREDITOR,** Trinity Financial Services, LLC (hereinafter referred to as "SECURED CREDITOR"), by and through its undersigned attorney, hereby files this response to Debtor's Objection to Claim (Doc. No. 33) and states as follows:

1. On or about February 5, 2018, Debtor filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code.

2. On or about Secured Creditor filed its Proof of Claim (Claim No. 21)

3. On or about August 22, 2018 the debtor filed its Objection to Secured Creditors Claim (Doc. No. 33).

4. The Debtors Objection to Claim (Doc. No. 33) alleges that there are duplicate claims for the same mortgage, one by Secured Creditor and one by Clark Partners, LLC. The Debtors Objection to Claim (Doc. No. 33) also ambiguously claims that Secured Creditors claim is "padded" and "over-inflated". The Debtors Objection to Claim fails to identify a specific charge that is being objected to by the Debtor.

5. On or about September 7, 2018 Secured Creditor filed an amended Proof of Claim (Claim No. 21-2) outlining all fees, costs, and charges owed by the debtor.

6. Secured Creditors Amended Proof of Claim (Claim No. 21-2) also contains a complete collateral chain showing that Secured Creditor is entitled to enforce the Mortgage and Note. Attached hereto and incorporated hereto as Exhibit A is Secured Creditors Amended Proof of Claim (Claim No. 21-2).

7.  In contrast, Claim No. 18 filed Clark Partners, LLC lacks any documentation proving the fees and costs its claims. Further it lacks copy of the Note and any endorsements or alonges showing Clark Partners, LLC's alleged ownership of the Note. Finally, the claim also lacks any documents showing a chain of title of the Mortgage from the originator to Clark Partners, LLC.

8.  Clark Partners, LLC only attachments to its claim are a copy of the Mortgage (likely obtained from public record) and a "floating" Assignment of Mortgage to Clark Partners LLC that does not trace back to the Originator of the loan.

**WHEREFORE, PREMISES CONSIDERED,** Secured Creditor prays that this Honorable Court deny Debtors Objection to Claim (Doc. No. 33) as moot, together with such further relief and this Honorable Court deems Secured Creditor is entitled.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was provided via electronic and/or Regular U.S. Mail to the parties listed on the attached service list, on October 23, 2018.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States Bankruptcy Court for the Eastern District of Pennsylvania, and I am in compliance with the additional qualifications to practice in this Court set forth in the Local Rules.

Date: October 23, 2018

Signature: /s/ Kathryn M. Wakefield
Kathryn M. Wakefield, Esq., ID #85395
DWALDMANLAW, P.C.
4900 Carlisle Pike, #182
Mechanicsburg, PA 17050
Telephone: (844) 899-4162
Facsimile: (844) 882-4703
Primary Email: kathryn@dwaldmanlaw.com
Attorney for Secured Creditor

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 23rd Day of October 2018, I served a copy of the foregoing by regular U.S. Mail or the Court's CM/ECF system to the following parties listed on the below service list:

## SERVICE LIST

Trinity Finanacial Services
c/o Kathryn M. Wakefield
DWALDMANLAW, P.C.
4900 Carlisle Pike, #182
Mechanicsburg, PA 17050
damian@dwaldmanlaw.com
kathryn@dwladmanlaw.com
bankrutcy@dwaldmanlaw.com
service@dwaldmanlaw.com


Beverly Glover
7300 Woodbine Avenue
Philadelphia, PA 1915


Beverly Glover
c/o DAVID J. AVERETT
Law Offices of David J. Averette, P.C.
7719 Castor Avenue
Philadelphia, PA 19152
(215) 342-5024
Email: averettlaw@comcast.net

*Trustee*
WILLIAM C. MILLER, Esq.
Chapter 13 Trustee
P.O. Box 1229
Philadelphia, PA 19105

*U.S. Trustee*
United States Trustee
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107

Signature: /s/ Kathryn M. Wakefield
Kathryn M. Wakefield, Esq., ID #85395
DWALDMANLAW, P.C.
4900 Carlisle Pike, #182
Mechanicsburg, PA 17050
Telephone: (844) 899-4162
Facsimile: (844) 882-4703
Primary Email: kathryn@dwaldmanlaw.com
Attorney for Secured Creditor

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | BEVERLY GLOVER |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern District of Pennsylvania |
| Case number | 18-10753-amc |

---

Official Form 410

# Proof of Claim — AmenDeD

4/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

TRINITY FINANCIAL SERVICES, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| TRINITY FINANCIAL SERVICES, LLC<br>Name | TRINITY FINANCIAL SERVICES, LLC<br>Name |
| 2618 SAN MIGUEL DRIVE, SUITE 303<br>Number    Street | 28784 NETWORK PLACE<br>Number    Street |
| NEWPORT BEACH    CA    92660<br>City    State    ZIP Code | CHICAGO    IL    60673<br>City    State    ZIP Code |
| Contact phone (855) 818-6806 | Contact phone (855) 818-6806 |
| Contact email lossmit@trinityfs.com | Contact email lossmit@trinityfs.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____    Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   1   4   3   0

**7. How much is the claim?**   $_____ 95,936.49 . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

SECONDARY MORTGAGE LOAN

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:   7300 WOODBINE AVE, PHILADELPHIA, PA 19151

**Basis for perfection:**   OPEN-END MORTGAGE

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ UNKNOWN

**Amount of the claim that is secured:**   $ 95,936.49

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____ 95,936.49

**Annual Interest Rate (when case was filed)** 10.880 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

<table>
<tr><td>12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?</td><td colspan="2">☑ No</td></tr>
</table>

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ **Yes.** *Check all that apply:* |

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

**Amount entitled to priority**

$_____

$_____

$_____

$_____

$_____

$_____

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   5 / 31 / 2018
   MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | DON A. MADDEN, III |
| | First name        Middle name        Last name |
| Title | PRESIDENT |
| Company | TRINITY FINANCIAL SERVICES, LLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 2618 SAN MIGUEL DRIVE, SUITE 303 |
| | Number    Street |
| | NEWPORT BEACH          CA      92660 |
| | City          State   ZIP Code |
| Contact phone | (855)818-6806          Email lossmit@trinityfs.com |

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 18-10753-amc |
| Debtor 1: | BEVERLY GLOVER |
| Debtor 2: | |
| Last 4 digits to identify: | 1 4 3 0 |
| Creditor: | TRINITY FINANCIAL SERVICES, LLC |
| Servicer: | TRINITY FINANCIAL SERVICES, LLC |
| Fixed accrual/daily simple interest/other: | FIXED |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $36,672.79 |
| Interest due: | $47,547.49 |
| Fees, costs due: | $11,716.21 |
| Escrow deficiency for funds advanced: | |
| Less total funds on hand: | − |
| Total debt: | $95,936.49 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | $84,220.28 |
| Prepetition fees due: | $11,716.21 |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | |
| Less funds on hand: | − |
| Total prepetition arrearage: | $95,936.49 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | $594.25 |
| Monthly escrow: | |
| Private mortgage insurance: | |
| Total monthly payment: | $594.25 |

## Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin. int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | |

Account Activity

How Funds Were Applied/Amount Incurred

Balance After Amount Received or Incurred

See Attachment

1400001430
BEVERLY GLOVER
7300 WOODBINE AVE
PHILADELPHIA, PA 19151

**TRINITY** FINANCIAL SERVICES LLC

## Amortization Table

| Payment Number | Payment Date | Principal Balance | Interest | Accrued Interest | Scheduled Payment | Late Charge |
|---|---|---|---|---|---|---|
| 1 | 4/1/2006 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 2 | 5/1/2006 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 3 | 6/1/2006 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 4 | 7/1/2006 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 5 | 8/1/2006 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 6 | 9/1/2006 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 7 | 10/1/2006 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 8 | 11/1/2006 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 9 | 12/1/2006 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 10 | 1/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 11 | 2/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 12 | 3/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 13 | 4/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 14 | 5/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 15 | 6/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 16 | 7/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 17 | 8/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 18 | 9/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 19 | 10/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 20 | 11/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 21 | 12/1/2007 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 22 | 1/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 23 | 2/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 24 | 3/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 25 | 4/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 26 | 5/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 27 | 6/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 28 | 7/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 29 | 8/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 30 | 9/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |


TRINITY FINANCIAL SERVICES, LLC

| Payment Number | Payment Date | Principal Balance | Interest | Accrued Interest | Scheduled Payment | Late Charge |
|---|---|---|---|---|---|---|
| 31 | 10/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 32 | 11/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 33 | 12/1/2008 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 34 | 1/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 35 | 2/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 36 | 3/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 37 | 4/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 38 | 5/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 39 | 6/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 40 | 7/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 41 | 8/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 42 | 9/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 43 | 10/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 44 | 11/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 45 | 12/1/2009 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 46 | 1/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 47 | 2/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 48 | 3/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 49 | 4/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 50 | 5/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 51 | 6/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 52 | 7/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 53 | 8/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 54 | 9/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 55 | 10/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 594.25 | $ 29.71 |
| 56 | 11/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | $ 52,130.78 | - |
| 57 | 12/1/2010 | $ 36,672.79 | 10.880% | $ 332.50 | - | - |
| 58 | 1/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | - | - |
| 59 | 2/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | - | - |
| 60 | 3/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | - | - |
| 61 | 4/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | - | - |
| 62 | 5/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | - | - |
| 63 | 6/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | - | - |
| 64 | 7/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | - | - |
| 65 | 8/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | - | - |
| 66 | 9/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | - | - |



| Payment Number | Payment Date | Principal Balance | Interest | Accrued Interest | Scheduled Payment | Late Charge |
|---|---|---|---|---|---|---|
| 67 | 10/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 68 | 11/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 69 | 12/1/2011 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 70 | 1/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 71 | 2/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 72 | 3/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 73 | 4/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 74 | 5/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 75 | 6/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 76 | 7/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 77 | 8/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 78 | 9/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 79 | 10/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 80 | 11/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 81 | 12/1/2012 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 82 | 1/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 83 | 2/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 84 | 3/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 85 | 4/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 86 | 5/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 87 | 6/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 88 | 7/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 89 | 8/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 90 | 9/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 91 | 10/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 92 | 11/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 93 | 12/1/2013 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 94 | 1/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 95 | 2/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 96 | 3/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 97 | 4/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 98 | 5/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 99 | 6/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 100 | 7/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 101 | 8/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 102 | 9/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |



TRINITY
FINANCIAL SERVICES, LLC

| Payment Number | Payment Date | Principal Balance | Interest | Accrued Interest | Scheduled Payment | Late Charge |
|---|---|---|---|---|---|---|
| 103 | 10/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 104 | 11/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 105 | 12/1/2014 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 106 | 1/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 107 | 2/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 108 | 3/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 109 | 4/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 110 | 5/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 111 | 6/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 112 | 7/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 113 | 8/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 114 | 9/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 115 | 10/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 116 | 11/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 117 | 12/1/2015 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 118 | 1/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 119 | 2/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 120 | 3/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 121 | 4/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 122 | 5/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 123 | 6/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 124 | 7/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 125 | 8/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 126 | 9/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 127 | 10/1/2016 | $ 36,672.79 | 10.880% | $ 337.50 | $ - | $ - |
| 128 | 11/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 129 | 12/1/2016 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 130 | 1/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 131 | 2/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 132 | 3/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 133 | 4/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 134 | 5/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 135 | 6/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 136 | 7/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 137 | 8/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 138 | 9/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |

**TRINITY** FINANCIAL SERVICES, LLC

| Payment Number | Payment Date | Principal Balance | Interest | Accrued Interest | Scheduled Payment | Late Charge |
|---|---|---|---|---|---|---|
| 139 | 10/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 140 | 11/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 141 | 12/1/2017 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 142 | 1/1/2018 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |
| 143 | 2/1/2018 | $ 36,672.79 | 10.880% | $ 332.50 | $ - | $ - |

| TOTALS | |
|---|---|
| Missed Payments | $ 84,220.28 |
| Late Charges | $ 1,604.48 |
| Foreclosure Fees | $ 10,111.73 |
| Misc Charges | $ - |

| TOTAL PRE-PETITION | $ 95,936.49 |
|---|---|

| Unpaid Principal | $ 36,672.79 |
|---|---|
| Accrued Interest | $ 47,547.49 |
| Late Charges | $ 1,604.48 |
| Foreclosure Fees | $ 10,111.73 |
| Misc Charges | $ - |

| Payoff as of 2/1/2018 | $ 95,936.49 |
|---|---|

# OPEN-END MORTGAGE

CHELSEA SETTLEMENT AGENCY
.2591 . NYER ROAD SUITE 27
MON.   MLE PA 15146



50148246

_PARCEL #_ _____

Commonwealth of Pennsylvania ——————————————   Space Above This Line For Recording Data

## OPEN-END MORTGAGE
This Mortgage secures future advances

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ..........September 21, 2000.... and the parties, their addresses and tax identification numbers, if required, are as follows:

    MORTGAGOR: BEVERLY A GLOVER
                    7300 WOODBINE AVE
                    PHILADELPHIA, PA  19151

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

    LENDER:  BANK ONE, NA
               Organized and existing under the laws of the United States of America
               P.O. BOX 710097
               COLUMBUS, OH  43271-0097

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:
Refer to exhibit 'A' which is attached hereto and made a part hereof.

The property is located in .PHILADELPHIA................................................ at ........................................................
                                 (County)
.7300 WOODBINE AVE............................., ........PHILADELPHIA...................., Pennsylvania .....19151...........
      (Address)                       (City)                               (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 43,281.00.............................................. . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
    PROMISSORY NOTE DATED SEPTEMBER 21, 2000 SECURING THE PRINCIPAL AMOUNT OF $43,281 AND SIGNED BY BEVERLY A GLOVER WITH A MATURITY DATE OF OCTOBER 1, 2010

PENNSYLVANIA - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)
©1994 Bankers Systems, Inc. St. Cloud, MN (1 800 397 2341) Form RE MTG-PA 12/19/94                     *(page 1 of 6)*



B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.



59148246

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor irrevocably grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument.

Mortgagor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Security Instrument, and this assignment will remain effective until the Obligations are satisfied. Mortgagor agrees that Lender is entitled to notify Mortgagor or Mortgagor's tenants to make payments of Rents due or to become due directly to Lender after such recording, however Lender agrees not to notify Mortgagor's tenants until Mortgagor defaults and Lender notifies Mortgagor of the default and demands that Mortgagor and Mortgagor's tenants pay all Rents due or to become due directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.



16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA. 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.



Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives any right to appraisement relating to the Property.

©1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form RE-MTG-PA 12/19-94



**26. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Purchase Money.** This Security Instrument secures advances by Lender used in whole or in part to acquire the Property. Accordingly, this Security Instrument, and the lien hereunder, is and shall be construed as a purchase money mortgage with all of the rights, priorities and benefits thereof under the laws of the Commonwealth of Pennsylvania.

☐ **NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE.**

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

    ☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other .................................................

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor, intending to be legally bound hereby, agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

X ................................................  9-21-10
(Signature) BEVERLY A. GLOVER              (Date)

................................................
(Signature)                                (Date)

................................................  9/21/00
(Witness)

................................................
(Witness)

**ACKNOWLEDGMENT:**

(Individual)
COMMONWEALTH OF ..Pennsylvania.................., COUNTY OF .PHILADELPHIA.......................... ss.

On this, the ...........21st.... day of .....September., 2000............., before me ....Carol A. Gibson.....

the undersigned officer, personally appeared BEVERLY A. GLOVER

........................................................................... known to me (or satisfactorily proven) to be the person(s) whose name(s) is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

My commission expires:

(Seal)
NOTARIAL SEAL
Carol A. Gibson, Notary Public
Upper Moreland Twp, Montgomery County
My commission expires Nov. 29, 2003

................................................
Title of Officer

It is hereby certified that the address of the Lender within named is: P. O. BOX 710097, COLUMBUS, OH 43271-0097



50148246
Page 1 of 1

All that certain lot or piece of ground with buildeings and improvements thereon erected,

Situate in the 34th Ward of the City of Philadelphia, described according to a survey and plan of properties in Overbrook Park #1 by George T. Shegog. Surveyor and Regulator of the 7th District, dated May 19th, 1947 to wit:

Beginning at a point on the Southeasterly side of Woodbine Avenue (50 feet wide) measured North 40 degrees 11 minutes 33 seconds East along the said Southeasterly side of Woodbine Avenue the distance of 429.920 feet from the intersection of the Southeasterly side of Woodbine Avenue and the Northeasterly side of Haverford Avenue (80 feet wide) both lines extended thence extending South 49 degrees 48 minutes 29 seconds East 92.500 feet to a point on the center line of a 15 feet wide driveway which extends Northeastwardly from the said Haverford Avenue to West End Drive (50 feet wide) thence North 40 degrees 11 minutes 31 seconds East along the center line of aforesaid 15 feet wide driveway 42.915 feet to a point on the Southwesterly side of said West End Drive thence North 59 degrees 45 minutes 10.83 seconds West along the said Southwesterly side of West End Drive 72.913 feet to a point of curve thence Westwardly on the arc of a circle curving to the left; which connects said Southwesterly side of West End Drive and the said Southeasterly side of Woodbine Avenue; having a radius of 25 feet the arc length of 34.931 feet to a point of tangent on the said Southeasterly side of Woodbine Avenue thence South 40 degrees 11 minutes 31 seconds West along the Southeasterly side of Woodbine Avenue 5.698 feet to a point being the first mentioned point and place of beginning.

Also known as parcel no. 34-4-1302-00.

# Secondary Mortgage Loan
# Note

| | | |
|---|---|---|
| BANK ONE, NA<br>P.O. BOX 710097<br>COLUMBUS, OH 43271-0097<br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the Lender, its successors and assigns<br>TERMS FOLLOWING A ☐ APPLY ONLY IF CHECKED | BEVERLY A GLOVER<br>7300 WOODBINE AVE<br>PHILADELPHIA, PA   19151<br><br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each Borrower above, jointly and severally. | Account #<br>Loan Number<br>Date September 21, 2000<br>Maturity Date Oct. 1, 2010<br>Loan Amount $43,281.00<br>Renewal Of |

## Secondary Mortgage Loan
### This agreement is subject to the provisions of the Secondary Mortgage Loan Act.

For value received, I promise to pay to you at your address listed above the PRINCIPAL sum of FORTY THREE THOUSAND TWO HUNDRED
EIGHTY ONE and NO/100* * * * * * * * * * * * * * Dollars $ 43,281.00

☒ Single Advance: I will receive all of this principal sum on Sep. 26, 2000 . No additional advances are contemplated under this note.
☐ Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).
Conditions: The conditions for future advances are _____
_____

**INTEREST:** I agree to pay interest on the outstanding principal balance from ___September 26, 2000___ at the
rate of ___10.880___ % per year until MATURITY .
☐ Variable Rate: Notice to borrower: This document contains provisions for a variable interest rate. This rate may then change as stated below.
Change Dates: Each date on which the interest rate may change is called a Change Date. The interest rate may change _____
_____ and on every _____ thereafter.
The Index: Beginning with the first Change Date, the interest rate will be based on the following Index: _____
_____
The most recent Index value available as of the date ☐ 45 days ☐ _____ before each Change Date
is called the "Current Index."
Calculation of Change: Before each Change Date, the Lender will calculate the interest rate, which will be _____
_____ the Current Index. The result of this calculation will be rounded _____
_____ . The new interest
rate will become effective on each Change Date. Subject to any limitations below, this will be the new interest rate until the next Change Date.
Limitations: The interest rate will never be greater than _____ % or less than _____ %.
☐ The interest rate will never change on any single Change Date by more than _____ %.
Effect of Variable Rate: A change in the interest rate will have the effect of changing the amount of the scheduled payments.
**ACCRUAL METHOD:** Interest will be calculated on a ___actual/365___ basis
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above)
☐ at a rate equal to _____
☒ **LATE CHARGE:** I agree to pay a late charge on the portion of any payment made more than ___10___ days after it is due equal to ___5.000%___
of the late payment .
☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not   included in the principal amount
above: _____
**PAYMENTS:** I agree to pay this note as follows:
120 payments of $594.25 each on the 1st of each month beginning on November 1, 2000

**SECURITY:** This note is secured by (describe separate document by type (e.g., mortgage) and date):
MORTGAGE TO SECURE DEBT DATED SEPTEMBER 21, 2000 SECURING THE PRINCIPAL AMOUNT OF $43,281

**ADDITIONAL TERMS:**

PURPOSE: The purpose of this loan is ___CONSUMER: DEBT___
___CONSOLIDATION___

SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING
THOSE ON PAGE 21). I have received a copy on today's date.

Signature for Lender 9/21/00

X _____
BEVERLY A GLOVER

## ADDITIONAL TERMS OF THE NOTE

**GENERALLY** - The headings at the beginning of each section are for convenience only and are not to be used in interpreting the text of the section.

**DEFINITIONS** - "I," "me," or "my" means each borrower who signs this note and each other person or legal entity (including sureties, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - This note and any agreement securing this note will be governed by the laws of the state of Pennsylvania. The fact that any part of this note cannot be enforced will not affect the rest of this note. Any change to this note or any agreement securing it must be in writing and agreed to by you and me.

**PAYMENTS** - Each payment I make on this note will first reduce the amount I owe you in the following order: a) accrued interest; b) to the unpaid principal balance; c) to any fees or charges that are due. No late charge will be assessed on any payment when the only deficiency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record. If any payment due under this loan does not equal or exceed the amount of interest due, you may, at your option, increase the amount of the payment due and all future payments to an amount that will pay off this loan in equal payments over the remaining term of this loan.

**PREPAYMENT** - I may prepay this loan in whole or in part at any time. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If "Variable Rate" is checked on page 1, I will pay interest at the rates in effect from time to time. This interest rate(s) and other changes on this loan will never exceed the highest rate or charge allowed by law for this loan. If the index specified on page 1 ceases to exist, I agree that you may substitute a similar index for the original.

**INDEX** - If you and I have agreed that the interest rate on this note will be variable and will be related to an index, then the index you select will function only as that the interest rate on this note will have a particular relationship to the interest rate you charge on any other loans or any type or class of loans with your other customers.

**ACCRUAL METHOD** - The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1. For interest calculation, the accrual method will determine the number of days in a year. If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**SINGLE ADVANCE LOANS** - If this is a single advance loan you and I expect that you will only make one advance of principal, however, you may add other amounts to the principal if you make any payments described in the PAYMENTS BY LENDER section below.

**MULTIPLE ADVANCE LOANS** - If this is a multiple advance loan, you and I expect that you will make more than one advance of principal subject to the conditions of any separate agreement.

**PAYMENTS BY LENDER** - If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**POST-MATURITY INTEREST** - Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified on page 1. For purposes of this section, final maturity occurs:

:a) On the date of the last scheduled payment of principal; or

:b) On the date you accelerate the due date of this loan (demand immediate payment).

**REAL ESTATE OR RESIDENCE SECURITY** - If this loan is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this agreement.

**ASSUMPTION** - This note and any document securing it cannot be assumed by someone buying the secured property from me. That will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the property securing this note, I will be in default on this loan. You may proceed against me under any due on sale clause in the security agreement, which is incorporated by reference.

**DEFAULT** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, I will be in default on this loan and any agreement securing this loan if any one or more of the following occurs:

(a) I fail to make a payment in full when due;

(b) I die, am declared incompetent, or become insolvent,

(c) I fail to keep any promise I have made in connection with this loan;

(d) I fail to pay, or keep any other promise on, any other loan or agreement I have with you;

(e) I make any written statement or provide any financial information that is untrue or inaccurate at the time it is provided;

(f) Any creditor of mine attempts to collect any debt I owe through court proceedings, set-off or self-help repossession;

(g) The property securing this Loan is damaged, destroyed or stolen;

(h) I fail to provide any additional security that you may require;

(i) Any legal entity (such as a partnership or corporation) that has agreed to pay this note merges, dissolves, reorganizes, ends its business or existence, or a partner or majority stockholder dies or is declared incompetent; or

(j) Anything else happens that causes you to believe that you will have difficulty collecting the amount I owe you.

If any of us are in default on this note or any security agreement, you may exercise your remedies against any or all of us.

**REMEDIES** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, and after giving any appropriate notice, if I am in default on this loan or any agreement securing this loan, you may:

(a) Make unpaid principal, earned interest and all other agreed charges I owe you under the loan immediately due;

(b) Use the right of set-off as explained below;

(c) Demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy.

(d) Make a claim for any and all insurance benefits or refunds that may be available on my default;

(e) Use any remedy you have under state or federal law, and

(f) Use any remedy given to you in any agreement securing this loan.

By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it happens again.

**COSTS OF COLLECTION AND ATTORNEYS' FEES** - I agree to pay you all reasonable costs you incur to collect this debt or realize on any security. This includes, unless prohibited by law, reasonable attorneys' fees. This provision also shall apply if I file a petition in any other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(a) Any deposit account balance I have with you;

(b) Any money owed to me on an item presented to you or in your possession for collection or exchange; and

(c) Any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**OTHER SECURITY** - Any present or future agreement securing any other debt I owe you also will secure the payment of this loan. Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission. Also, property securing another debt will not secure this loan to the extent such property is in household goods.

**OBLIGATIONS INDEPENDENT** - I understand that my obligation to pay this loan is independent of the obligation of any other person who has also agreed to pay it. You may, without notice, release any of us or any one of us, give up any right you may have against any of us, extend new credit to any of us, or renew or change the terms of this loan with one or more of us. You may do any of this without affecting my obligation to pay this loan. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this loan.

**WAIVER** - I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**PRIVACY** - I agree that from time to time you may receive credit information about me from others, including other lenders and credit reporting agencies. I agree that you may furnish to a register basis credit and experience information regarding my loan to others seeking such information. To the extent permitted by law, I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**FINANCIAL STATEMENTS** - I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**PURCHASE MONEY LOAN** - If this is a Purchase Money Loan, you may include the name of the seller on the check or draft for this loan.

**NOTICE TO COSIGNER**

You (the cosigner) are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable

Loan Number: █████████
Borrower Name: **GLOVER**

## ALLONGE TO NOTE

Pay to the order of

Gmac mortgage LLC

without recourse this 30th day of September, 2004

**Bank One, NA**

Jennifer L. Hillebrand
**Vice President**

GMAC#:
COL ID#

## ALLONGE

**This endorsement is a permanent part of the Note Dated: <u>09/21/2000</u>**

ORIGINAL LENDER: BANK ONE, NA
AMOUNT: $ 43,281.00
BORROWER: BEVERLY A GLOVER
PROPERTY: 7300 WOODBINE AVE.
                PHILADELPHIA, PA 19151

**PAY TO THE ORDER OF: WILMINGTON TRUST NATIONAL ASSOCIATION, not in
its individual capacity, but solely as Trustee under Greenwich Investors XL Pass-Through
Trust Agreement dated as of March 1, 2012**

**WITHOUT RECOURSE: GMAC MORTGAGE LLC SMB GMAC MORTGAGE
CORPORATION**

Signor: SHIRLEY RONEY
Title: AUTHORIZED OFFICER



## ALLONGE TO THE NOTE

**LOAN #:**
**Previous Loan #:** 430
**Borrower:** BEVERLY A GLOVER
**Date of Note:** 09/21/2000
**Loan Amount:** $43,281.00
**Property Address:** 7300 WOODBINE AVE, PHILADELPHIA, PA 19151

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: TRINITY FINANCIAL SERVICES, LLC , Without any recourse, representation or warranty, express or implied

**WILMINGTON TRUST, NATIONAL ASSOCIATION, not in its individual capacity, but solely as Trustee under Greenwich Investors XL Pass-Through Trust Agreement dated as of March 1, 2012 BY WMD Asset Management, LLC, its Attorney-in-Fact**

Signature: _____

Printed Name: Dennis E. Carlton

Title: Managing Director/General Counsel

## ALLONGE TO THE NOTE

Loan Number:              1430
Document Reference #:   0001760000003297
Borrower:               BEVERLY A GLOVER
Date of Note:           9/21/2000
Loan Amount:            $43,281.00
Property Address:        7300 WOODBINE AVE, PHILADELPHIA, PA, 19151

For Value received, I hereby transfer, endorse and assign the within Note.

Pay to the order of:

_____, Without recourse

**Trinity Financial Services, LLC**

Signature: _____

Name:    Tara Newton
Title:     Assistant Vice President

# Corporate Assignment of Mortgage

eRecorded in Philadelphia PA  Doc Id: 52839732
10/16/2014 11:50AM        Receipt#: 1415647
Page 1 of 3                      Rec Fee: $220.00
Commissioner of Records    Doc Code: A
State RTT:   Local RTT:

Prepared By:
RICHMOND MONROE GROUP, INC.
Paige Martin,
PO BOX 458
KIMBERLING CITY, MO 65631
417-447-2931

When Recorded Return To: Trinity
    PAIGE MARTIN         Trck
Richmond Monroe Group
    PO Box 458          1430
Kimberling City, MO 65686

Assessor's/Tax ID No. 34-4-1302-00

## CORPORATE ASSIGNMENT OF MORTGAGE
Philadelphia, Pennsylvania   REFERENCE #: DBI-299811   '     1430"
INVESTOR #: DBO-18887
Assignment Prepared on: April 14th, 2014.

Assignor: WILMINGTON TRUST, NATIONAL ASSOCIATION, not in its individual capacity, but solely as Trustee under Greenwich Investors XL Pass-Through Trust Agreement dated as of March 1, 2012 at 559 SAN YSIDRO RD, SUITE I, SANTA BARBARA, CA 93108.
Assignee: TRINITY FINANCIAL SERVICES, LLC at 2618 SAN MIGUEL DR, STE 303, NEWPORT BEACH, CA 92660.

Executed By: BEVERLY A GLOVER  To: BANK ONE, NA
Date of Mortgage: 09/21/2000 Recorded: 10/03/2000 as Instrument/Document: 50148246 in Philadelphia, Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is TRINITY FINANCIAL SERVICES, LLC at 2618 SAN MIGUEL DR, STE 303, NEWPORT BEACH, CA 92660.
Attested By: Paige Martin

- Assigned by BANK ONE, NA TO GMAC MORTGAGE CORPORATION Dated: 08/10/2004 Recorded: 08/04/2005 as Instrument/Document: 51235054

- Assigned by GMAC MORTGAGE CORPORATION TO WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLEY AS TRUSTEE UNDER GREENWICH INVESTORS XL PASS-THROUGH TRUST AGREEMENT DATED AS OF MARCH 1, 2012 Dated: 03/27/2012 Recorded: 11/02/2012 as Instrument/Document: 52555413

Assessor's/Tax ID No. 34-4-1302-00

Property Address: 7300 WOODBINE AVE, PHILADELPHIA, PA 19151, situated in the City of Philadelphia, County of Philadelphia, in the Commonwealth of Pennsylvania.
In the City of PHILADELPHIA
Legal: See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

"ILE"BEAMRC*02/14/2014 04:18.00 PM* AMROG3AMRC000080000000000002190* PAPHILA* DBI-299811 PAPHILA_MORT_ASSIGN_ASSN *P3M*PKMAMRC*

52839732   Page 2 of 3
10/16/2014 11:50AM

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths
DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $43,281.00 with interest, secured thereby,
together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the
full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor
hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee
forever, subject to the terms contained in said Mortgage.

WILMINGTON TRUST, NATIONAL ASSOCIATION, not in its individual capacity, but solely as Trustee
under Greenwich Investors XL Pass-Through Trust Agreement dated as of March 1, 2012 BY WMD Asset
Management, LLC, its Attorney-in-Fact
On ___5/1/14___

By: _____
Dennis E. Carlton, Managing Director / General Counsel

STATE OF FLORIDA
COUNTY OF DUVAL

On ___5/1/14___, before me, Stacey Schwab, a Notary Public in and for DUVAL in the State of
FLORIDA, personally appeared Dennis E. Carlton, Managing Director / General Counsel of
WILMINGTON TRUST, NATIONAL ASSOCIATION, not in its individual capacity, but solely as Trustee
under Greenwich Investors XL Pass-Through Trust Agreement dated as of March 1, 2012, personally
known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,

_____
Stacey Schwab
Notary Expires: 11/27/2015

STACEY SCHWAB
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE146913
Expires 11/27/2015

(This area for notarial seal)

"SE"BCAMRC"02/14/2014 01 15.20 PM" AMRC03AMRC09000000000000000053199" PAPHILA" DS-529911 PAPHILA_MORT_ASSIGN_ABEN "PXM"PXIAMRC"

52839732    Page 3 of 3
10/16/2014 11:50AM

All that certain lot or piece of ground with buildeings and improvements thereon erected,

Situate in the 34th Ward of the City of Philadelphia, described according to a survey and plan of properties in
Overbrook Park #1 by George T. Shegog, Surveyor and Regulator of the 7th District, dated May 19th, 1947 to wit:

Beginning at a point on the Southeasterly side of Woodbine Avenue (50 feet wide) measured North 40 degrees 11
minutes 33 seconds East along the said Southeasterly side of Woodbine Avenue the distance of 429.920 feet
from the intersection of the Southeasterly side of Woodbine Avenue and the Northeasterly side of Haverford
Avenue (80 feet wide) both lines extended thence extending South 49 degrees 48 minutes 29 seconds East
92.500 feet to a point on the center line of a 15 feet wide driveway which extends Northeastwardly from the said
Haverford Avenue to West End Drive (50 feet wide) thence North 40 degrees 11 minutes 31 seconds East along
the center line of aforesaid 15 feet wide driveway 42.915 feet to a point on the Southwesterly side of said West
End Drive thence North 59 degrees 45 minutes 10.83 seconds West along the said Southwesterly side of West
End Drive 72.913 feet to a point of curve thence Westwardly on the arc of a circle curving to the left; which
connects said Southwesterly side of West End Drive and the said Southeasterly side of Woodbine Avenue, having
a radius of 25 feet the arc length of 34.931 feet to a point of tangent on the said Southeasterly side of Woodbine
Avenue thence South 40 degrees 11 minutes 31 seconds West along the Southeasterly side of Woodbine Avenue
5.898 feet to a point being the first mentioned point and place of beginning.

Also known as parcel no. 34-4-1302-00.

(2000099075/2000099075/5)